Proceedings by the executors of Sarah J. Mapes, deceased, for the discovery of property belonging to her estate, and alleged to be withheld by the administrator of John S. Mapes, deceased.

*B. R. Champion,* for executors of Sarah J. Mapes, deceased.   *W. D. Mills,* for administrator of John S. Mapes, deceased.

COLEMAN, S.   This is a proceeding taken under section 2706 of the Code of Civil Procedure to discover property withheld, etc.   George H. Mapes, the person cited, who is the administrator of John S. Mapes, deceased, filed a verified answer in which he admits having possession of the property mentioned, and denies the petitioners' claim thereto; however expressly submitting, for decision by the surrogate, the question in dispute between the two estates, to which estate the property in question belongs.   The property consists of two certificates for 23 shares of the capital stock of the Louisville, New Albany & Chicago Railroad Company.   These identical certificates belonged to the estate of George Mapes, deceased, the father of John S. Mapes and Sarah J. Mapes.   In September, 1884, John S. and Sarah J. each gave a receipt to the executors of George for one-half of the stock.   Sarah died, July 24, 1888.   Shortly after her death John and the two executors of Sarah came to the law office of B. R. Champion in Goshen, when, as appears from the testimony of Mr. Champion, John produced a tin box, from which was taken two $1,000 railroad bonds, one of which was conceded to belong to Sarah's estate, and it was then delivered to her executors.   There was also in the box, from which was taken the two certificates in question, some silver certificates and other papers, in regard to which Mr. Champion then said:  "Here is that same stock again we had in the settlement of the estate of John's father.   I don't know that it is worth anything.   You may as well leave it in the box."   And all the papers found in the box, except the bond given to Sarah's executors. were left in it, and the box was taken away by John, and at his death the two certificates in question were found among his effects. There is no proof that the certificates were ever in Sarah's actual possession. They are supposed to have been in the box produced by John on the occasion referred to, of which she had possession until her death, but there is no proof that they were.   The possession of the certificates by John is evidence of his ownership of the stock, which can only be overcome by evidence that the presumption is not true.   This I do not think has been done.   It is not necessary for John's administrator to prove the way in which the title to the stock passed from Sarah or her executors to John.   A written transfer of Sarah's interest is not necessary, and the absence of such a transfer is accounted for by the fact that the stock was not considered of sufficient value to have this done; indeed the stock had never been transferred to them by the executors of their father.   We may think that it is improbable that Sarah gave or sold her stock to John, and so, too, we can imagine that she did so, but these speculations do not prove anything either way.   We must, therefore, fall back on the legal inferences which arise from the facts. proven, which, while they may not bring conviction, will, however, effect a disposition of the question on settled legal principles.   I, therefore, conclude from the evidence before me that the stock belonged to John S. Mapes at his death, and that his administrator is entitled to the possession of the certificates.

---

PEOPLE *ex rel.* GILBERT *v.* WEMPLE.

*(Supreme Court, General Term, Third Department.   December 12, 1890.)*

JUSTICES OF SUPREME COURT—RETIREMENT—COMPENSATION.
Const. N. Y. art. 6, § 13, provides that no person shall hold the office of justice of the supreme court longer than the last day of December next after he shall be 70 years of age, and that "the compensation of every justice * * * whose term of

office shall be abridged, * * * and who shall have served as such justice ten years or more, shall be continued during the remainder of the term for which he was elected." *Held*, that the "ten years or more" need not be a part of the abridged term to entitle the retiring justice to a continuance of his compensation, and that a justice who had served 17 years continuously, when his second official term of 14 years, 9 of which had expired, was abridged, because of his having attained 70 years, was entitled to the full compensation for the remaining 5 years of his term.

Appeal from special term, Columbia county.

This is an application by Jasper W. Gilbert to enforce the payment to him by the comptroller of $6,000 due him for arrears of compensation as a justice of the supreme court whose term of office had been abridged pursuant to the constitution. From an order directing a peremptory *mandamus*, the comptroller appeals. The following is the opinion of Judge EDWARDS of the special term:

"On January 1, 1883, the relator had served as a justice of the supreme court for the period of 17 years, continuously, when his second official term of 14 years, 9 of which had expired, was abridged by reason of his having attained the age of 70 years. His compensation for the remaining 5 years of his term has been paid to him, except the annual sum of $1,200 provided by section 1, c. 541, Laws 1872, which the respondent declines to pay on the ground that the provision of the constitution, which continues the compensation of a justice whose term of office has been abridged by limitation of age, is inapplicable to one who has served fewer than 10 years of the abridged term. It is now settled that the $1,200, of which payment is sought to be enforced, is part of the compensation provided by section 13, art. 6, of the constitution, (*People* v. *Wemple*, 115 N. Y. 302, 22 N. E. Rep. 272,) and the only question for our consideration is whether the relator is within the provisions of that section. The portions of the section which are here material read as follows: 'The official terms of the said justices * * * who shall be elected after the adoption of this article, shall be fourteen years from and including the first day of January next after their election; but no person shall hold the office of justice * * * longer than until and including the last day of December next after he shall be seventy years of age. The compensation of every * * * justice of the supreme court, whose term of office shall be abridged, pursuant to this provision, and who shall have served as such justice ten years or more, shall be continued during the remainder of the term for which he was elected.' Must the 'ten years or more' be a part of the abridged term to entitle the retiring justice to a continuance of his compensation? This is the sole question to be answered, and its proper determination must be sought for in the language of the section cited. In the interpretation of statutes it is a primary rule that the intent is to be ascertained, but it is also fundamental that, so far as possible, the intent must be derived from the language employed. When this is free from ambiguity or contradiction, it is self-interpreting, or, more accurately speaking, needs no interpretation. When the words used have a definite and obvious meaning, we are not at liberty to resort to these artificial rules of construction which wisdom and ingenuity have been compelled to devise by reason of the infirmity and obscurity of language.

"The words must be accepted in their plain import, and we are not permitted to add to or take from the language employed in order to extend or restrict the operation of the statute to what we might conceive to have been the legislative intent. With the familiar principle in view, let us see whether the language of this section is not so plain, so free from doubt, as to need no extrinsic aids of construction. Concededly, the apparent meaning of the first and second clauses is that the official term of a justice of the supreme court shall be 14 years, and, in case he shall become 70 years of age during such term, he shall not hold the office longer than until the following last day of

December; that is, his term is thereby abridged. Unless the framers of this section have chosen inapt words to express their idea, their intent is clearly discoverable in the language of the following clause, which explicitly declares that the compensation of a justice of the supreme court whose term has been abridged shall be continued during the remainder of the term for which he was elected, in case he has served as such justice 10 years or more. But it is claimed that this clause should be construed as if it read 'ten years or more of such term;' that is, 10 years or more of the term abridged. Why should it be so construed? The import of the words used is plain, and why should we add to them to change the signification? The language is not 'who shall have served ten years or more of such abridged term,' but is 'who shall have served as such justice ten years or more.' It seems to me quite clear that it is only by injecting into the clause the additional words which the respondent claims should be regarded as there that his contention as to its meaning can be sustained. Without these additional words it is obvious that the language means one thing; with them, it is equally obvious that it means another thing. The interpolation of such words into a statute as change the meaning and restrict its operation is a legislative and not a judicial function. Perhaps it would have been wiser if this clause had been so framed as to extend its beneficent provisions to those only who had served 10 years of the abridged term. However this may be, it is our province not to reform the law, but simply to declare *ita lex scripta est.* The motion for a writ of peremptory *mandamus* should be granted."

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Charles F. Tabor,* for appellant. *Stephen B. Nash,* for respondent.

PER CURIAM. Order affirmed on opinion of court below, with $50 costs and disbursements.

---

### WORK *et al. v.* BEACH.

*(Supreme Court, Special Term, New York County. December 3, 1890.)*

1. CONTRACTS—INTERPRETATION—PROMISE TO PAY "WHEN ABLE."

In settlement of an action in which a defense had been interposed, and as the result of negotiations in which defendant recognized some obligation with regard to one of the two accounts sued on, but made no admission as to the extent or character of the obligation, the accounts were liquidated, and a balance stated as due, which defendant promised to pay "when I shall be able to do so." *Held,* that the promise was conditional, and not equivalent to an absolute promise to pay on demand, or in a reasonable time; and plaintiffs, to recover thereon, must plead and prove that defendant was able to pay. Following 6 N. Y. Supp. 27.

2. SAME.

In an action on such promise, the only evidence of defendant's ability to pay was that, during the three years since the promise was made, he had been in receipt of a judicial salary of $1,250 per month. In the negotiations, defendant had informed plaintiffs of his financial condition, and his inability to pay any part of plaintiffs' claim out of his salary, so long as certain obligations specified continued. His circumstances had not changed, and he was not, in fact, able to pay any part of the sum when the action was brought. *Held,* that plaintiffs could not recover.

Action by Frank Work and others against Miles Beach. See former decision, 6 N. Y. Supp. 27.

*Henry S. Bennett,* for plaintiffs. *A. C. Brown,* for defendant.

BARRETT, J. We must approach the consideration of this case from the stand-point of the rule laid down by the general term in disposing of the demurrer. *Work* v. *Beach,* 53 Hun, 7, 6 N. Y. Supp. 27. It was there held, upon full consideration, that the promise to pay "when able to do so," upon which this action is founded, was conditional, and that to entitle the plaintiffs to recover thereon they must plead and prove the fact of such ability. The rule thus laid down is supported by many authorities, both in England and in this